# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **PROGRESSIVE CASUALTY** | ) | **CASE NO.   1:06CV1501** |
| **INSURANCE COMPANY,** | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | **OPINION AND ORDER** |
| | ) | |
| **BUDGET RENT A CAR** | ) | |
| **SYSTEM, INC.,** | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J**.:

This matter comes before the Court upon the parties' Cross Motions for Summary
Judgment (ECF DKT #40 & #41), and Plaintiff's Motion (ECF DKT #47) to Partially Strike
or, in the Alternative, Disregard Ron Koch's Deposition Errata Sheet and Declaration.  For
the following reasons, the Motion for Summary Judgment of Plaintiff, Progressive Casualty
Insurance Company ("Progressive"), is granted; the Motion for Summary Judgment of
Defendant, Budget Rent A Car System, Inc. ("Budget"), is denied; and Plaintiff's Motion to
Partially Strike, etc., is denied, as the Errata Sheet and Declaration were not necessary to the
Court's analysis.

## I. FACTUAL BACKGROUND

Progressive and Budget entered into a Rental Company Agreement, effective April 1, 2004, by which Budget agreed to rent certain vehicles, at specified rates, to authorized Progressive employees, to be driven only by Progressive employees and, in certain instances, such employees' spouses, in the course and scope of the employees' responsibilities to Progressive.  For its part, Progressive agreed to provide primary insurance covering liability and physical damage for all Budget vehicles so rented.  The term, "Driver," as used in the Agreement, is defined in Paragraph 1.02:

> A Progressive employee who is renting a Motor Vehicle for business use.  The term "Driver" will also apply to other Progressive employees who are driving the Rental Vehicle and to the Driver's spouse where that would be logically appropriate in context for any of those individuals.

In Paragraph 1.09, "Rental Vehicles" are "Vehicles provided by Rental Company at a Facility for rental by Drivers."  "Rental Period" is defined in Paragraph 1.08 as "[t]he period of time during which a Driver is renting a Rental Vehicle."  Pursuant to Paragraph 4.01, the Rental Period is "initiated by the Driver's execution of the Rental Form."  Progressive agreed, by the terms of Paragraph 6.01, to provide primary insurance covering liability and physical damage for vehicles rented under the Agreement.  The Agreement provides for mutual indemnification in Paragraph 8.02.

While insured by Progressive, an individual named Nancy Sevor was involved in a motor vehicle accident in 2001 in Rochester, New York.  A personal injury lawsuit was filed against Sevor, and she was noticed for a deposition in New York in June of 2004.  To facilitate Sevor's attendance, since she was a resident of Texas, and as a courtesy, Progressive's Travel Services Department arranged by computerized request for rental of a

-2-

Budget vehicle, and requested that the rental be directly billed to Progressive.  It is undisputed that Progressive used the direct bill code, "AB091B;" and the rental form, which Sevor signed, included the corporate discount code or BCD number assigned by Budget to Progressive — "V024800."  It is further undisputed that the "AB" number was assigned to Progressive by Budget upon the execution of their first agreement in 1996; and, although contractual arrangements changed more than once over the years, the assigned "AB" number remained the same.  On June 4, 2004, Sevor arrived at Budget's Rochester, New York facility and rented a Ford Taurus sedan.  While operating the Budget vehicle on June 8, 2004, Sevor was involved in a serious traffic accident with a motorcyclist, Gregory Bouwens, who suffered major injuries, including a closed head brain injury.

Sevor was not an insured of Progressive at the time of this accident.  She has never been employed by Progressive, and was not a spouse of a Progressive employee at any time relevant to this Complaint.

On January 12, 2005, Bouwens filed a personal injury lawsuit against Sevor and PV Holding Corp., the title owner of the Budget Vehicle.  On January 9, 2006, Budget, through its parent company, Cendant Car Rental Group, Inc., notified Progressive of the Bouwens litigation and asked Progressive to tender a defense on behalf of Budget pursuant to Paragraph 6.01 of the Agreement.  By letter dated May 26, 2005, Progressive denied coverage for the Sevor rental, asserting it was not covered by the Rental Company Agreement.

On June 6, 2006, Progressive Casualty filed its original Complaint for Declaratory Relief against Budget Rent A Car System.  On December 22, 2006, Progressive filed its Second Amended Complaint, comprised of one count for Declaratory Relief.  Progressive

-3-

seeks an order declaring (1) the Rental Company Agreement is not applicable to the Bouwens litigation or the Budget vehicle on the date of the accident; (2) Progressive has no duty or obligation to tender a defense or provide insurance coverage for the claims asserted in the Bouwens litigation, for physical damage to the Budget vehicle, or for any other claims, injuries or damages arising from or relating to the accident; and (3) Progressive is entitled to all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorneys' fees pursuant to Paragraph 10.01 of the Agreement.

On January 16, 2007, Budget Rent A Car System filed its Answer to Second Amended Complaint and Counterclaim.  In Count One of its Counterclaim, Budget alleges Progressive breached the Rental Company Agreement.  In Count Two, Budget alleges Progressive represented the Sevor Rental was covered by the terms of the Agreement, and knew or should have known the representation was false.  Further, Budget's reliance upon Progressive's representation was reasonable because "Budget had no reason to believe that Progressive would rent a car pursuant to the Travel Agreement when Progressive was not entitled to do so" and "the identity of Progressive employees, agents, and their spouses is information within the exclusive care, custody and control of Progressive."  (ECF DKT #28, ¶33).  Budget alleges, as the result of Progressive's misrepresentation and failure and refusal to provide indemnification, Budget has been damaged.  In Count Three, Budget seeks a declaration that Progressive has the duty to defend, indemnify and hold Budget harmless for any liability in connection with the Bouwens action.  Lastly, Budget seeks costs and attorneys' fees pursuant to Section 10.01 of the Travel Agreement.

At a conference conducted on March 5, 2007, the Court ordered this case to proceed

upon Cross Motions for Summary Judgment.  The matter has now been fully briefed and is ripe for adjudication.

## II. LAW AND ANALYSIS

### Standard of Review

### Motion for Summary Judgment

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See, Fed. R. Civ. P. 56(c).  The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim.  *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005). This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make

the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### Declaratory Judgment

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  Nevertheless, the Supreme Court has reiterated the discretionary nature of the Act.  In *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S. Ct. 580, 7 L. Ed. 2d 604 (1962), the highest court opined: "'The Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 499 [62 S.Ct. 1173, 1177-78, 86 L.Ed. 1620 (1942)]."  Put another way, the declaratory judgment statute "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Green v. Mansour*, 474 U.S. 64 at 72 (1985).

In this Circuit, declaratory judgments are favored when (1) the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when (2) it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  *Grand Trunk W.R.R. Co. v.  Consolidated Rail Corp.*, 746 F.2d 323 at 325-326

(6th Cir. 1984).

**Contract Interpretation**

Paragraph 11.11 of the Rental Company Agreement provides as follows: "All of the rights and duties of the parties arising from or relating in any way to the subject matter of this Agreement will be governed, construed, and enforced pursuant to the laws of the State of Ohio, without regard to Ohio's rules concerning the conflict of laws."

Whether a contract is ambiguous is a matter of law for the Court. *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 214 (1991). The ambiguity must appear on the face of the contract; and extrinsic evidence cannot render an otherwise unambiguous contract provision ambiguous. *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992). The Court must interpret the contract as a whole. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 219 (2003). "If the language used by the parties [in a contract] is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone." Williston on Contracts § 31:4. "When the terms of the contract are clear and unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Shifrin*, 64 Ohio St.3d 635 at 638. This is especially true when the Court is confronted with a fully integrated agreement.

> "Where the parties, following negotiations, make mutual promises which thereafter are integrated into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions ... ***Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence.***"

*Construction Interior Systems, Inc. v. Marriott Family Restaurants, Inc.*, 984 F.2d 749, 754 (6th Cir. 1993) (quoting *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51

(1989)) (citations omitted; emphasis added).

Paragraph 11.10 of the Rental Company Agreement specifically provides: "This Agreement is the result of negotiations between the parties, both of which have been represented by counsel.  As a result, neither party shall be considered the drafter of the Agreement."  As the Ohio Supreme Court noted in this regard:

> "The parties in the case before us are commercial enterprises of sufficient size and quality as to presumably possess a high degree of sophistication in matters of contract.  They all provide services to the general public as their means of producing income and customarily rely on contracts.  Each has the financial power to provide against loss by insurance or other means."

*Glaspell v. Ohio Edison Company*, 29 Ohio St.3d 44, 47 (1987).

The Rental Company Agreement between Progressive and Budget defines the term "Driver" in Paragraph 1.02 as "[a] Progressive employee who is renting a Motor Vehicle for business use."  Moreover, the Agreement includes an integration clause at Paragraph 11.06, which reads:

> "Entire Agreement: This Agreement, including any and all Addenda and Exhibits hereto, embodies the entire agreement and understanding between the parties regarding the subject matter hereof.  ***All prior or contemporaneous agreements, representations, correspondence, conversations, and/or memoranda relating to the subject matter hereof (i.e. Progressive employee business travel rentals) are hereby replaced and superseded by this Agreement***.  No change, alteration, or modification hereof may be made except in a writing that expressly refers to this Agreement and is signed by both parties."  (emphasis added).

It is undisputed that the Sevor Rental falls outside the purview of this Agreement, since it is unquestioned that Sevor was neither an employee nor an authorized spouse of a Progressive employee at the time of the rental and that the rental was not for business use.

There is no ambiguity nor vagueness in the language and terminology utilized in the

-8-

Agreement.

Progressive and Budget are sophisticated, corporate entities, who were assisted by legal counsel in the negotiation and drafting of the 2004 Agreement.  The Court discerns no inequity nor imbalance in bargaining power which would justify judicial intervention.

As noted earlier, the subject matter of the Rental Company Agreement is clearly delineated as "Progressive employee business travel rentals;" and the integration clause at Paragraph 11.06 provides the Agreement supersedes and replaces only those prior or contemporaneous agreements, representations, correspondence, conversations, or memoranda relating to that subject matter.  Therefore, by the plain language employed by Budget and Progressive, arrangements for rentals in the case of non-employees for non-business purposes (like Sevor) are exclusive of the terms, restrictions, and obligations set out in the Rental Company Agreement.

Without question, at the time the Progressive Travel Department arranged for the rental of a Budget vehicle for Ms. Sevor's use in June of 2004, Progressive entered, into the computer reservation system, the code number assigned to it since 1996, i.e., "AB091B." Deposition testimony reveals Progressive intended to obtain the corporate discount rate and to have the cost directly billed.  Budget contends the use of the "AB" code is necessarily tied to the terms and provisions of the current agreement between the parties.  According to Budget, when the "AB" number was transmitted to the Budget system in the spring of 2004, it triggered the terms and conditions of the Agreement  —  corporate discount, direct billing, no charges for the optional insurance coverage, and Progressive's obligation to provide defense and indemnification resulting from incident with the Sevor rental.

However, upon careful review of the Rental Company Agreement, the Court finds no mention of the "AB" code number in the text of the contract nor in the exhibits incorporated into the Agreement.  There is no reference to the specific number assigned to Progressive in 1996, nor that it remains in use, nor that it was available only to arrange employee rentals for business purposes.  The subject matter of the Agreement is plain: Progressive employee business travel rentals.  Yet, significantly, the language of the Agreement does not say this is the only possible rental arrangement between the parties, nor, conversely, that any rental other than for Progressive employee business travel is prohibited by the contract.

Therefore, the Court declares the Rental Company Agreement is not applicable to the Bouwens litigation or the Budget vehicle rented to Sevor on the date of the accident; and Progressive has no duty or obligation to tender a defense or provide insurance coverage for the claims asserted in the Bouwens litigation, for physical damage to the Budget vehicle arising from the accident, or for any other claims, injuries or damages arising from or relating to the accident.

**Breach of Contract**

In its Counterclaim, Budget alleges Progressive breached the 2004 Rental Company Agreement.  First, Budget argues the Agreement was breached when Progressive failed to honor the $2,000,000 annual sales obligation.  The evidence demonstrates Progressive rebid its car rental discount agreements sometime in 2003.  Budget submitted a response to Progressive's Request for Proposal ("RFP Response"), which was incorporated as an exhibit into the final 2004 Rental Company Agreement.  In Sections 5.1 and 7.2 of the RFP Response, Budget sets forth a schedule of rebates offered to Progressive based upon annual

-10-

net revenues beginning with the amount of $1,500,000, scaling up to $2,000,000+. Progressive concedes, and the Court agrees, Budget's discounted rates were based on the level of business Progressive provided during the contract period.  However, in no way does the language of the RFP Response set a minimum revenue of $2,000,000 as a condition precedent or as an obligation imposed upon Progressive under the Agreement.  Progressive's admitted failure to meet that $2,000,000 threshold does not constitute breach of contract.

Next, Budget asserts Progressive is in breach because it rented cars at a discount for non-employees even though the 2004 Agreement did not permit such rentals.  As discussed previously, Progressive did not arrange for Sevor's rental vehicle under the Rental Company Agreement.  Progressive used the "AB" code number assigned to it since 1996, as it had done in the years before for rentals for job applicants, or for the convenience of favored clients or insureds.  Progressive did not refer to the Agreement when booking the Sevor rental.  The fact that Budget's automated system created the impression with Budget that the rental was made pursuant to the Agreement's terms did not place Progressive in breach.

Thus, Budget's further contentions, that Progressive violated its contractual obligations to provide insurance coverage for Sevor under Paragraph 6.01 and to indemnify and hold Budget harmless pursuant to Paragraph 8, are without merit.  The Agreement is wholly inapplicable.

Budget has failed to meet its burden of demonstrating there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on its breach of contract claims.

**Equitable Estoppel and Agency**

-11-

In its briefs on summary judgment, Budget posits the theory that Sevor was an apparent agent of Progressive when she signed for the vehicle, operated the vehicle, and through her negligence, became involved in an accident with the Budget vehicle. As a consequence, Budget argues, her negligence triggered Progressive's liability to indemnify Budget under Paragraph 8.02(2) of the Rental Company Agreement. The Court finds this argument unavailing.

Significantly, no apparent agency claim is alleged in Budget's Counterclaim. Though liberally construed, complaints drafted by attorneys are held to a more stringent standard than those drafted by *pro se* litigants. *See Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir.1996) (citation omitted). Although the standard of review is liberal, more than bare assertions of legal conclusions are required. *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726-27 (6th Cir.1996). The complaint must "give the defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* at 726. Progressive was deprived of fair notice of an apparent agency claim, revealed for the first time in a post-discovery dispositive motion. That aside, the evidence does not support an apparent agency claim. Budget concedes there was no way to know from the reservation entered into the system whether Sevor was a "Driver,"defined by the provisions of the Agreement as a Progressive employee. (Defendant's Motion for Summary Judgment, ECF DKT #43, pp.19-20). Moreover, at the time an individual, like Sevor, appears at the Budget counter to pick up the rental vehicle, admittedly no inquiry is made by the Budget representative except to request a valid driver's license. (Deposition of Ron Koch, ECF DKT #34, p. 27). Thus, there is no evidence Sevor was "cloaked with apparent authority" to act as an agent on behalf of her alleged principal,

-12-

Progressive.

In like manner, Budget theorizes in its Motion for Summary Judgment that Progressive is equitably estopped from denying its liability for coverage and indemnification. Once again, the Counterclaim is devoid of any claim for equitable estoppel.  The Court cannot countenance the assertion of a claim for the first time at the dispositive motion stage, not even as a secondary argument for breach of contract.  Progressive did not have fair notice of the equitable estoppel claim against it; and was, furthermore, deprived of the ability to present a defense because non-expert discovery was closed.

**Negligent Misrepresentation**

In Ohio, to be liable for negligent misrepresentation, the Defendant must: (1) supply false information; (2) for the guidance of others in their business transactions; (3) which causes pecuniary loss to the Plaintiff; (4) while the Plaintiff justifiably relied on the information; (5) and while the Defendant failed to exercise reasonable care or competence in obtaining or communicating the information.  *Picker Intern., Inc. v. Mayo Foundation*, 6 F. Supp.2d 685 (N.D. Ohio 1998).

In Count Two of its Counterclaim, Budget alleges "Progressive arranged the Sevor Rental utilizing and/or pursuant to the Travel Agreement and thereby represented that the Sevor Rental was covered by the terms of the Travel Agreement."  (ECF DKT #28, ¶ 28). Further, "Progressive either knew or should have known that the foregoing representation was false and it failed to exercise reasonable care or competence when it made the foregoing representation."  (ECF DKT #28, ¶ 30).  Moreover, "Budget's reliance upon Progressive's representation was reasonable because Budget had no reason to believe that Progressive

would rent a car pursuant to the Travel Agreement when Progressive was not entitled to do so."  (ECF DKT #28, ¶ 33).  "As a direct and proximate result of Progressive's misrepresentation and Progressive's subsequent failure and refusal to indemnify Budget and/or provide Budget and Sevor with a defense and insurance coverage in connection with the Bouwens Action, Budget has been damaged."  (ECF DKT #28, ¶ 35).

Applying the elements of negligent misrepresentation to the facts before this Court, Budget cannot prevail.  Budget cannot demonstrate there is no genuine issue of material fact as to its justifiable reliance on Progressive's use of the "AB" and "BCD" numbers to reserve the car for Sevor.  Progressive's Associate Manager of Travel, Linda Ackroyd, testified she never saw the 2004 Rental Company Agreement before the litigation started.  (Ackroyd Deposition, ECF DKT #35, p.22).  She also testified the "AB" number is for direct billing and the "BCD" number is for the corporate discount.  (Ackroyd Deposition, ECF DKT #35, p.25).  She described the common practice in 2004 as follows:

> "If we have a trainee, if we have a Progressive employee, like, for instance, an interview candidate that's either Progressive or non-Progressive, like somebody's bringing them in for an interview, if we had outside attorneys, outside consultants that we were bringing in, if we had claimants at the time, anybody that was a Progressive employee or a non-Progressive employee that was doing business with Progressive, we would be able to use the AB numbers if we wanted them direct billed, meaning Progressive was going to pay for them ..."

(Ackroyd Deposition, ECF DKT #35, p.26).

The evidence presented to this Court also reveals that, in practice, Budget would not know whether or not a vehicle reservation utilizing the "AB" and "BCD" numbers was for a Progressive employee for business use.  Julie Stein, an attorney in Budget's legal department, sent an e-mail to her counterpart at Progressive, Peter Miller, expressing her concerns during

the negotiations for the 2004 Agreement:

> "4.03 Driver Protection Products.  We discussed this area at length in our meeting.  We cannot determine if a Progressive rental is for business or leisure and must offer the protection in every instance.  We incur liability by not offering the coverage . . . This section does not really belong in a corporate agreement."

(Miller Deposition, ECF DKT #36, pp.10-12; Plaintiff's Reply, ECF DKT #51, pp.8-9).

Nonetheless, that paragraph remained in the final executed draft of the 2004 Rental Company Agreement.  Despite the advice and assistance of able legal counsel, Budget consciously negotiated and agreed to the contract, and assumed the risk of not knowing if a reservation was for a Progressive employee rental, nor whether Budget should have offered insurance.  In its own brief in support of summary judgment, Budget admits: "There is no way for Budget to discern from the reservation whether or not Progressive made a reservation for a person meeting the definition of a "Driver."  (ECF DKT #43, p.20).

In light of the above, this Court is convinced that, rather than a misrepresentation by Progressive upon which Budget justifiably relied, Budget was victimized by computer-generated assumptions of Budget's own making.  By its own admission, once the 2004 Agreement was signed, "Budget sent a copy thereof to the Budget Sales Administration Department to enter the new Billing and Insurance Terms into the Budget computer.  By doing so those Billing and Insurance Terms would then be associated with the existing AB Numbers. ... If the Progressive Travel Department was using the AB Numbers, Budget would have to follow the directives in the computer and recognize that the Progressive Travel Department was following all of the terms and conditions of the 2004 Agreement."  (Defendant's Motion for Summary Judgment, ECF DKT #43, p.13).  Clearly, Progressive was

-15-

unaware of how the internal Budget computer system was supplied the contract data and would generate information for the use of Budget's agents.  It bears repeating, the 2004 Rental Company Agreement does not reference the AB Numbers, does not provide that their use is restricted to the Agreement's terms; nor does it incorporate Progressive's assigned codes as an exhibit.  Since the process of linking the codes to the current contract terms was solely and totally within Budget's control, the evidence presented cannot support a finding that Budget *justifiably* relied on information received from Progressive.  Budget is, therefore, not entitled to prevail on its claim for negligent misrepresentation.

### III. CONCLUSION

For the foregoing reasons, the Motion of Plaintiff, Progressive Casualty Insurance Company, for Summary Judgment is granted; and the Motion of Defendant, Budget Rent A Car System, Inc., for Summary Judgment on Plaintiff's Second Amended Complaint and Budget's Counterclaim is denied.  Plaintiff's Motion to Strike or, in the alternative, Disregard Ron Koch's Deposition Errata Sheet and Declaration is also denied.

The Court, therefore, declares the 2004 Rental Company Agreement is not applicable to the Bouwens litigation or the Budget vehicle rented to Nancy Sevor; and Progressive has no duty or obligation to tender a defense, provide insurance coverage nor provide indemnification with regard to the claims asserted in the Bouwens litigation, for physical damage to the Budget vehicle arising from the accident, or for any other claims, injuries or damages incurred by Budget as the result of the Bouwens-Sevor accident.

Progressive asks to be awarded "all expenses, costs and disbursements incident to the prosecution of this action, including reasonable attorneys' fees pursuant to Paragraph 10.01 of

-16-

the Agreement."  (ECF DKT #23, p.8).  However, Progressive has been successful in

obtaining a judicial declaration that the 2004 Rental Company Agreement is not applicable

here.  Consequently, Progressive is not entitled to recover costs nor reasonable attorneys' fees

through the operation of Paragraph 10.01 of that inapplicable Agreement.


**IT IS SO ORDERED.**

**DATE:  _6/26/2008__**

                                    **S/ Christopher A. Boyko**

                                    _____

                                    **CHRISTOPHER A. BOYKO**
                                    **United States District Judge**